Filed 4/29/25  In re Jan.B. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION FOUR

| | |
|---|---|
| In re Jan.B. et al., Persons Coming Under the Juvenile Court Law. | B335262 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 23LJJP00369 |
| Plaintiff, | |
| v. | |
| J.B., | |
| Defendant and Appellant, | |
| Jan.B. et al., | |
| Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Donald A. Buddle, Jr., Judge. Affirmed.

Lauren K. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant J.B.

Janette Freeman Cochran for Jan. B., et al., Persons Coming Under the Juvenile Court Law.

**INTRODUCTION**

In this juvenile dependency case, J.B. (father) challenges the jurisdictional findings and dispositional orders relating to 14-year-old Jan.B., 12-year-old Jal.B., and 10-year-old T.B., his three children with non-party S.B. (mother). Contrary to father's arguments, the juvenile court's jurisdictional and removal findings are supported by substantial evidence. Nor did the juvenile court exceed the bounds of its broad discretion by declining to proceed with informal supervision pursuant to Welfare and Institutions Code[1] section 360, subdivision (b). Accordingly, we affirm.

**DISCUSSION[2]**

## I. Jurisdiction

### A. Governing Principles

Under section 300, subdivision (a), the juvenile court may exercise jurisdiction over a child upon finding "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent . . . ." Jurisdiction may lie under section 300,

---

1 All undesignated statutory references are to the Welfare and Institutions Code.

2 We resolve this case by memorandum opinion. (Cal. Stds. Jud. Admin., § 8.1.) The parties are familiar with the facts and procedural history of the case, so we do not fully restate those details here. (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851 [unpublished opinion merely reviewing correctness of juvenile court's decision "does not merit extensive factual or legal statement" (fn. omitted)].)

2

subdivision (b)(1)(A) where the juvenile court finds that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] (A) The failure or inability of the child's parent . . . to adequately supervise or protect the child."

"'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Instead, "'[t]he basic question under section 300 is whether circumstances at the time of the [adjudication] hearing subject the minor to the defined risk of harm.'" (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.) In evaluating whether a child faces a risk of harm under section 300, the court may consider past events, as "[a] parent's past conduct is a good predictor of future behavior." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.) To establish a risk of harm at the time of the hearing, however, "[t]here must be some reason beyond mere speculation to believe the alleged conduct will recur." (*In re James R.* (2009) 176 Cal.App.4th 129, 136.)

We review jurisdictional findings for substantial evidence. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.) Under this standard, "we view the record in the light most favorable to the juvenile court's determinations, drawing all reasonable inferences from the evidence to support the juvenile court's findings and orders." (*Ibid.*) "We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

**B.    Analysis**

The juvenile court found T.B. fell within the purview of section 300, subdivisions (a) and (b)(1) based on allegations that

father physically abused T.B.[3]  In so doing, the court credited the children's reports of physical abuse.  The juvenile court also noted that father had previously participated in an anger management course, but that this anger management course had apparently failed to prevent the abuse.

Father asserts the finding that he physically abused T.B. should be reversed as unsupported by substantial evidence.  In so doing, he contends the record lacks sufficient evidence demonstrating that he actually subjected T.B. to any physical abuse.  Father also argues that even if the record indicated he has been physically aggressive with T.B. in the past, it did not demonstrate such incidents were likely to recur.  We disagree.

Father highlights evidence supporting his position while minimizing and criticizing contrary evidence.  In so doing, father misapprehends substantial evidence review.  Father essentially invites us to reweigh the evidence, second-guess the juvenile court's credibility determinations, and resolve conflicts in the evidence in his favor.  But that is not our role as an appellate court.  (See *DeNike v. Mathew Enterprise, Inc.* (2022) 76 Cal.App.5th 371, 382 (*DeNike*).)  Rather, we must "view the record in the light most favorable to the juvenile court's determinations" (*In re Yolanda L.*, *supra*, 7 Cal.App.5th at p. 992) and "uphold a [finding] that is supported by substantial evidence even if substantial evidence to the contrary also exists." (*DeNike,* at p. 382.)  Applying these principles, we conclude the record

---

3    The juvenile court also found it appropriate to exercise jurisdiction over the children based on allegations of neglect pertaining to the mother.  Those allegations are not pertinent to this appeal, and we do not comment on them.

4

adequately demonstrates that father physically abused T.B and may do so again in the future.

All three children reported that father physically abused T.B. T.B. reported that the day after arriving at father's home, father grew angry when he saw T.B. sitting incorrectly on his electronic recliner couch. According to T.B., father yelled at him, "grabbed [him] by the shirt collar, shook him, and placed him onto the appropriate seat. Father then took his hand and pushed his head back and brushed his elbow to his eye." T.B. related that father's elbow left a mark near his eye. Later that day, T.B. reported, father yelled at him for being too loud while playing a game. T.B. stated father "'socked [him] three times in [his] body because [he] wasn't [being] quiet.'" While reporting this incident, T.B. "pointed to his mid-section of his body." T.B. explained that he "d[id] not want to return to . . . father's home because he does not like to be socked."

Similarly, Jan.B. reported that, after seeing T.B. sitting on the edge of the couch, father "'grabbed [T.B.] by his shirt, started swinging him around, shaking him, and the[n] . . . punched [T.B.] in his stomach and back[ ]'" with a closed hand. (Italics omitted.) Jan.B. also suggested that father hit T.B. in the eye, as T.B. had a bruise in the area. Jan.B. reported feeling afraid of father.

Jal.B. observed a different incident. She "witnessed . . . father sock [T.B.]" on "'his chest and his sides'" because T.B. "was not packing his bag fast enough so they could leave for [an] overnight [visit] to their grandmother's home."

Despite the children's reports of physical abuse—which, as noted above, the juvenile court credited—father repeatedly denied hitting T.B. or engaging in any abusive behavior while the children were in his care. Instead, he accused mother of coaching

5

the children into making false reports of physical abuse to prevent their placement with him. And in his most recent interview with the Department, father stated he did not want to participate in services because, in his view, mother alone was responsible for the family's referral to the Department.[4]

Viewed in the light most favorable to the juvenile court's finding, and with deference to its credibility determinations, the evidence discussed above demonstrates that despite completing an anger management program, father quickly lost his temper with nine-year-old T.B. and responded to the child's relatively minor misbehavior with inappropriate physical aggression (e.g., punching him multiple times on the torso) on more than one occasion. By the time of the disposition hearing, father had yet to take responsibility for his actions. He was also unwilling to participate in services.

On this record, the juvenile court could reasonably conclude that T.B. was at substantial risk of serious physical harm because father physically abused T.B. The juvenile court could also reasonably conclude that the abuse was likely to recur. (See *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ["One cannot correct a problem one fails to acknowledge"].) Thus, substantial

---

4       For these reasons, the present case is distinguishable from *In re J.N.*, *supra*, 181 Cal.App.4th 1010), discussed in father's opening brief. In that case, the family was involved in a car accident after the father, with the mother's acquiescence, tried to drive the family home from a restaurant while under the influence of alcohol. (*Id.* at pp. 1017-1018.) Soon thereafter, both parents accepted responsibility for their behaviors, expressed remorse for their actions, and recognized how they had placed the children in danger. (*Id.* at p. 1018.) Father has not done the same here.

evidence supports the juvenile court's jurisdictional finding based on father's physical abuse.

## II.    Disposition

### A.    Informal Supervision

#### 1.    Governing Principles

"Once the juvenile court finds jurisdiction under section 300, it must adjudicate the child a dependent unless the severity of the case warrants nothing more than [the Department's] supervision of family maintenance services.  Under section 360, subdivision (b), if appropriate, the court may, without adjudicating the child a dependent, order that services be provided to keep the family together under the informal supervision of the child welfare agency.  [Citations.]

"Whether to exercise this option under section 360, subdivision (b), is a discretionary call for the juvenile court to make; it may opt to do so, but it need not.  'The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with its discretion.'  [Citation.]  As an appellate court, we cannot reverse the court's dispositional order absent a clear abuse of discretion.  [Citation.]  A court exceeds the limits of legal discretion if its determination is arbitrary, capricious or patently absurd.  The appropriate test is whether the court exceeded the bounds of reason." (*In re N.M.* (2011) 197 Cal.App.4th 159, 171.)

#### 2.    Analysis

Father argues that, rather than declaring the children dependents of the court, the juvenile court should have followed the Department's recommendation and ordered informal supervision under section 360, subdivision (b).  In support of his

7

position, he notes that "[f]ather had his own residence, was employed outside of the home, lived with a female companion, and had been proactive with enrollment and participation in services."

Again, father fixates on the evidence weighing in his favor while ignoring the evidence undermining the merits of his position. But our inquiry in reviewing for abuse of discretion is similar to that which governs substantial evidence review. "In determining whether there has been . . . an abuse [of discretion], we cannot reweigh evidence or pass upon witness credibility. The trial court is the sole arbiter of such conflicts. Our role is to interpret the facts and to make all reasonable inferences in support of the order issued." (*Dodge, Warren & Peters Ins. Services, Inc. v. Riley* (2003) 105 Cal.App.4th 1414, 1420.)

Applying these principles, and as discussed above (see Discussion Part I.B., *ante*), the record demonstrates father physically abused T.B. more than once, notwithstanding his completion of an anger management program before receiving the children into his care. And contrary to his contentions, the evidence does not show he had been proactively participating in services at the time of disposition. Instead, in his most recent interview with the Department, father stated that he *did not* want to participate in services, and that he was not enrolled in any services or programs at the time. Thus, based on father's refusal to acknowledge his inappropriate physical discipline of T.B., and his unwillingness to engage in further services, we conclude that the juvenile court did not "exceed[ ] the bounds of reason" by declining to order informal supervision under section 360, subdivision (b). (*In re N.M.*, *supra*, 197 Cal.App.4th at p. 171.)

### B. Removal

#### 1. Governing Principles

Pursuant to section 361, subdivision (c)(1), the juvenile court may remove a child from the custody of a parent if it finds, by clear and convincing evidence, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." "A juvenile court's removal order at a disposition hearing will be affirmed on appeal if it is supported by substantial evidence." (*In re V.L.* (2020) 54 Cal.App.5th 147, 154.)

In *Conservatorship of O.B.* (2020) 9 Cal.5th 989 (*O.B.*), our Supreme Court clarified the nature of substantial evidence review applicable to a challenge to the sufficiency of the evidence supporting a finding made under the clear and convincing evidence standard. It held: "[A]n appellate court must account for the clear and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard. When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and

9

drawn reasonable inferences from the evidence." (*Id.* at pp. 1011-1012.)

## 2. Analysis

Father contends the removal order must be reversed because the record lacks substantial evidence to support the juvenile court's findings under either prong of the two-part test set forth in section 361, subdivision (c)(1). He argues that: (1) the record fails to demonstrate father abused T.B. and, therefore, does not indicate that T.B. would be at substantial risk of danger if returned to father; and (2) several reasonable alternatives to removal were available to safeguard T.B. from harm if he were to remain in father's care.

Again, the applicable standard of review mandates that we reject father's contentions. As set forth in detail above (see Discussion, Part I.B., *ante*), the children reported that, on more than one occasion, father responded to nine-year-old T.B.'s minor misbehaviors by punching him on the torso multiple times. At the time of these incidents, father had already completed an anger management program. And throughout the case, father has repeatedly denied hitting T.B., shown no insight into how his actions placed T.B. in danger, and recently expressed unwillingness to participate in services.

Viewing this evidence "in the light most favorable to the prevailing party below" (i.e., the Department), and giving "due deference" to the juvenile court's resolution of conflicts in the evidence, as well as its credibility determinations, we conclude the juvenile court could have found it "highly probable" that father physically abused T.B. multiple times and was likely to do so again in the future, such that T.B. would face "substantial danger to [his] physical health, safety, protection, or physical or

10

emotional well-being if [he] . . . were returned" to father. (*O.B.*, *supra*, 9 Cal.5th at p. 996; § 361, subd. (c)(1); see also *In re Cole C.* (2009) 174 Cal.App.4th 900, 918.) Thus, substantial evidence supports the court's finding under the first prong of section 361, subdivision (c)(1)'s two-part test.

As to the second prong, there is also substantial evidence that father's proffered alternatives to removal would not have been sufficient to protect T.B.[5] The record indicates that the reported incidents of abuse happened quickly, stemming from father's spontaneous and emotional reactions to T.B.'s relatively minor misbehavior. It therefore shows that father's prior participation in services (i.e., an anger management program) had not curbed his aggressive behavior. Nor, construed in the light most favor to the juvenile court's order, did the record show that father had gleaned insight into his reactive and anger-driven actions. Considering these circumstances, as well as father's unwillingness to participate in further services, and construing the evidence as we must on substantial evidence review, we conclude the juvenile court could reasonably have found it "highly probable" that T.B. would remain at risk if returned to father's care, even with father's proffered safeguards in place.[6] (*O.B.*,

---

5    Father suggested, as alternatives to removal, conditioning T.B.'s placement in father's care upon paternal grandmother residing in father's residence, mandating frequent updates to the juvenile court regarding T.B.'s well-being, and requiring father to participate in counseling.

6    The juvenile court stated as much when, contrary to father's assertion, it set forth the facts on which it relied in rendering its removal order as required under section 361, subdivision (e). Specifically, at the adjudication hearing, the court explained that it had "bas[ed] [its] decision [to remove T.B.

11

*supra*, 9 Cal.5th at p. 996; see also *In re Cole C.*, *supra*, 174 Cal.App.4th at p. 918.)  Thus, substantial evidence supports the court's finding that "there are no reasonable means by which [T.B.'s] physical health can be protected without removing [him] from [father's] . . . physical custody."  (§ 361, subd. (c)(1).)

## DISPOSITION

The jurisdictional findings and dispositional orders are affirmed as to father.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

DAUM, J.*

We concur:

COLLINS, Acting P.J.

MORI, J.

---

from father] on the sustained petition, the evidence that father's prior anger management classes were unsuccessful, and the fact that he punched . . . one minor[ ] [on] two different occasions." The court found father's actions to be inappropriate "given [T.B.'s] age and what [T.B.] allegedly did to offend . . . father."

\*      Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article IV, section 6 of the California Constitution.

12